UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| JASON ROBERT LEBLANC, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 2:13-cv-348-JDL |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably determined that the plaintiff had no severe impairment or combination of impairments. The plaintiff argues that the administrative law judge erroneously relied on the opinion of an agency nonexamining consultant, Robert Maierhofer, Ph.D., that predated important later-submitted evidence from Counseling Services, Inc. ("CSI") and impermissibly interpreted raw medical evidence in evaluating the CSI records. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 10) at 2-5. I find no error and, accordingly, recommend that the court affirm the decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2007, Finding 1, Record at 20; that he had medically determinable impairments of hepatitis C, anxiety, depression, attention deficit disorder ("ADD"), and substance addiction disorder, Finding 3, *id.*; that he had no impairment or combination of impairments that had significantly limited, or was expected to significantly limit, his ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments, Finding 4, *id.*; and that he, therefore, was not disabled from August 15, 2003, his alleged onset date of disability, through the date of the decision, June 11, 2012, Finding 5, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The plaintiff's statement of errors implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the

commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The record contains two expert opinions regarding the severity of the plaintiff's mental impairments. Agency nonexamining consultant David Margolis, Ph.D., completed a psychiatric review technique form ("PRTF") dated September 5, 2010, in which he indicated that the plaintiff had nonsevere affective and anxiety-related disorders that caused mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. *See* Record at 396, 406, 408. Dr. Maierhofer completed a PRTF dated April 1, 2011, in which he indicated that the plaintiff had nonsevere mental impairments of anxiety disorder, affective disorder, ADD/ADHD (attention deficit hyperactivity disorder), and alcohol/substance abuse disorder that caused mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. *See id*. at 79-80.

The record contains CSI notes spanning the time period from January 31, 2011, through April 2, 2012. *See id.* at 477-84, 558-77, 766-75, 778-79.

The administrative law judge afforded great weight to the Maierhofer opinion, which he deemed "consistent with the record . . . evidence, which shows mental status consistently within normal limits and improvement of symptoms with medication." *Id*. at 24. He explained:

> The first functional area is activities of daily living. In this area, the [plaintiff] has mild limitation. [He] testified that he attends sobriety meetings. He is able to prepare simple meals and shop. [He] reported playing in a baseball league.
>
> The next functional area is social functioning. In this area, the [plaintiff] has mild limitation. [He] attends sobriety meetings and often chairs them. He reported [a] good relationship with his parents. The record shows that [he] has been involved in several romantic relationships. Treatment notes report that [he] was appropriate and cooperative.
>
> The third functional area is concentration, persistence or pace. In this area, the [plaintiff] has mild limitation. Mental status examinations consistently describe [him] as alert and oriented with intact thought content and cognition.
>
> The fourth functional area is episodes of decompensation. In this area, the [plaintiff] has experienced no episodes of decompensation which have been of extended duration.

*Id*. at 24-25 (citations omitted).

The plaintiff asserts that the administrative law judge ignored findings by CSI psychiatrist Joseph Fishel, M.D., that were unseen by the agency consultants and are consistent with the existence of severe mental impairments. *See* Statement of Errors at 2-3. He points out that on January 31, 2011, Dr. Fishel noted:

> Concentration and attention is poor, with easy distractibility, poor short-term memory. Crying occurs occasionally; most recently due to the loss of his girlfriend's baby. Irritability occurs frequently when under stress, and chronic in nature. Frustration tolerance is low, and chronic in nature. Energy level is high, with a value of 8/10 (normal 5/10). Motivation average. Self-esteem and self-confidence are chronically low. . . . .

*Id*. (quoting Record at 483). He adds that Dr. Fishel diagnosed him with ADHD, post-traumatic stress disorder, dysthymia, generalized anxiety disorder, panic disorder with agoraphobia, and polysubstance dependence, in remission, and assessed him with a Global Assessment of Functioning, or GAF, score of 55, indicative of moderate impairment and consistent with a severe

4

impairment. *See id.*; Record at 484.[2] He contends that his continuing difficulties are documented in subsequent records from CSI, including a note in which Dr. Fishel assessed him with a GAF score of 50, which he asserts is consistent with an inability to work. *See* Statement of Errors at 3.[3] He posits that, in finding his mental impairments nonsevere despite the existence of CSI records unreviewed by agency consultants, the administrative law judge impermissibly interpreted raw medical evidence. *See id.* at 4; *see also, e.g.*, *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering commonsense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record.").

The commissioner contends that the administrative law judge supportably deemed the plaintiff's mental impairments nonsevere and did not impermissibly interpret raw medical evidence in doing so. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 11) at 6-8, 10-11. The commissioner has the better argument.

First, as the commissioner points out, *see* Opposition at 4 n.3, 7, Dr. Maierhofer reviewed Dr. Fishel's CSI note of January 31, 2011, cited by the plaintiff, as well as a CSI note of February 23, 2011, *see* Record at 79. Yet, he concluded that the plaintiff's mental impairments were nonsevere. *See id.* at 79-80.

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted).

[3] A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted).

Second, as the commissioner notes, *see* Opposition at 8, consistent with the administrative law judge's findings, the CSI notes postdating the Maierhofer opinion indicate that, after Dr. Fishel recorded a GAF score of 50 on March 7, 2011, the plaintiff's condition improved with treatment, and his mental status examinations were largely normal, *see* Record at 558, 560, 564, 566, 568, 570, 766, 768, 772, 778. As the commissioner points out, *see* Opposition at 8 n.5, other evidence of record corroborates this. For the period from May 16, 2011, through March 29, 2012, treating provider Arlene Kellman, D.O, recorded largely normal mental status examinations and assessed GAF scores of 70. *See* Record at 593, 595, 597, 599, 601, 603, 605, 607, 609, 611, 613, 615, 788.[4]

While the administrative law judge did not note that Dr. Fishel recorded GAF scores of 50 and 55 in early 2011, nothing turns on the omission. "A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions." *LaFontaine v. Astrue,* No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) (rec. dec., *aff'd* Oct. 13, 2011). "According to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning." *Id.* (citation and internal punctuation omitted). "A 41-50 reflects the assessor's opinion that the subject has serious symptoms *or* serious impairment of social or occupational functioning." *Id.* (citation and internal quotation marks omitted) (emphasis in original).

Moreover, "a GAF score is nothing more than a snapshot of a particular moment." *Sambrooks v. Colvin*, 566 Fed. Appx. 506, 511 (7th Cir. 2014). The administrative law judge supportably determined, based on the longitudinal evidence of record, that the plaintiff's mental

---

[4] A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV–TR at 34 (boldface omitted).

impairments were nonsevere. As the commissioner argues, *see* Opposition at 11, this did not constitute impermissible interpretation by a layperson of the raw medical evidence, *see, e.g., Anderson v. Astrue,* No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[.]") (citations omitted).[5]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[5] The plaintiff further contends, without elaboration, that the administrative law judge's failure to mention Dr. Fishel's assessment of a GAF score of 50 or to discuss the CSI records in any detail undermined his credibility determination. *See* Statement of Errors at 4. As the commissioner argues, *see* Opposition at 11-12, the plaintiff waived this point by failing to develop it, *see, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); *Reynolds v. Astrue*, No. 07-5-B-W, 2007 WL 3023573, at *7 (D. Me. Oct. 12, 2007) (rec. dec., *aff'd* Oct. 30, 2007) ("In this Court, issues asserted in conclusory fashion without developed argumentation will be considered waived.").

Dated this 30th day of September, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge